### NANCE v. CITY OF CHEYENNE et al.
#### No. 2070.

District Court, D. Wyoming.
Oct. 30, 1931.

A. A. Pearson, of Cheyenne, Wyo., for plaintiff.

H. B. Henderson, Jr., of Cheyenne, Wyo., for defendants.

McDERMOTT, Circuit Judge.

The city of Cheyenne passed an ordinance which prohibited the operation of gasoline filling stations unless there was an attendant in charge. The plaintiff owned and operated automatic filling stations which were so constructed that a customer could put money in a slot and serve himself. The object of such device was to avoid the necessity of an attendant, and the plaintiff in fact operates his stations without attendants.

Plaintiff filed a bill in equity to enjoin the enforcement of the ordinance on the ground that the ordinance was in violation of the Fourteenth Amendment to the Constitution of the United States, and of article 1 of section 6 of the Constitution of Wyoming, in that the ordinance deprived the plaintiff of equal protection of the laws and deprived him of his property without due process of law. The plaintiff also alleges that the ordinance was passed solely for the purpose of destroying the business of the plaintiff and removing him as a competitor of other retailers of gasoline in the city of Cheyenne, but no evidence was introduced in support of that charge. The defendants filed a "Resistance to Application for Temporary Injunction" which is in substance an answer, and by agreement it is treated as their answer.

The question presented therefore is whether the ordinance is so arbitrary and capricious as to violate the constitutional provisions referred to. The plaintiff argues that such ordinance does away with all the advantages of the automatic pump, and is prohibitive, and not regulative. It is true that the essential advantage of plaintiff's pump is that it does away with the necessity of an attendant. The question then is, Can a city prohibit the operation of filling stations without an attendant?

There was evidence that car owners were careless while serving themselves at the automatic stations, either in smoking, or permitting their motors to run while the tank was being filled, or in the spilling of gasoline. There was evidence that children drew gasoline from the automatic pumps and carried it away in open buckets. To meet this, plaintiff produced a number of witnesses who testified that, in their opinion, automatic filling stations were as safe or safer than ordinary filling stations. There was also a large amount of evidence that many attendants at the ordinary filling stations were careless and permitted cars to be filled while the motor was running, or while the owners were smoking. There is much evidence minimizing the dangers of handling gasoline. One witness testified that a fire could not be started around an automatic pump by accident; another that there was no fire hazard around filling stations. An expert testified that gasoline vapor could not be ignited by a cigar or cigarette; and from other witnesses the impression is left that the safest place to throw a lighted cigarette was in a tank while the car was being filled. That may be true, but the industry, including plaintiff, thinks otherwise, for the "No Smoking" rule is well-nigh universal at filling stations. Newspaper accounts of frequent filling station explosions tends to support the opinion of the industry. The court might test the question by putting a lighted cigarette into the gasoline vapor that surrounds the mouth of the tank while his car is being filled, but is fearful that the experts might be wrong. While the dangers incident to filling stations are probably exaggerated in the public mind, I cannot say the city council was arbitrary in acting upon the common belief that there is apt to be trouble if a live coal is interjected in gasoline vapor.

The evidence is that these automatic filling stations are carefully constructed and that many of them have been in operation for a considerable period of time without fires or explosions. I think an ordinarily careful person can serve himself at an automatic station without appreciable danger. But I do not conceive that to be the question. The question is whether the city council of Cheyenne, acting within its undoubted power to enact ordinances to reduce the fire hazard, acted arbitrarily and without reason in the passage of this ordinance.

Where the question is fairly debatable as to whether there is propriety or wisdom in the passage of an ordinance, it is for the city council, and not the witnesses nor the court, to determine. Standard Oil Co. v. City of Marysville, 279 U. S. 582, 49 S. Ct. 430, 73 L. Ed. 856.

In the cited case the Supreme Court of the United States held that the court would judicially notice that gasoline is a dangerously inflammable substance. The record bears this out, for all filling stations, including the automatic stations, take precautions to prevent fire. The question is not as to the amount of fire hazard in gasoline, nor is it whether the court believes that automatic sta-

tions are as safe as the ordinary station, nor is it whether some attendants are careless. The question is whether reasonable men may believe that the presence of an attendant, who is presumably instructed as to the dangers of handling gasoline and methods of avoiding the same, will decrease the hazards incident thereto.

Upon this question I have no doubt. It is quite true that some customers of a self-filling station may take every precaution that an attendant could take; it is quite as true that some customers may not, and do not, take such precautions. It is certainly true that the presence of an attendant adds to the likelihood of the safety precautions being observed. It is agreed by all that children and intoxicated adults should not undertake to handle gasoline. Yet children and those under the influence of liquor may operate an automatic pump. The presence of an attendant has a strong tendency to prevent the handling of gasoline by such irresponsibles.

The city council has power to enact ordinances to reduce the fire hazard; under the record in this case, it cannot be said that it acted arbitrarily in enacting the ordinance in question. The bill accordingly will be dismissed, and the temporary order issued will be dissolved.